FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA R,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | NO:  4:18-CV-5020-FVS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Cory J. Brandt.  Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 13, is granted.

## JURISDICTION

Plaintiff Andrea R.[1] (Plaintiff), filed for supplemental security income on January 14, 2014, alleging an onset date of February 1, 1991.[2] Tr. 148-51. Benefits were denied initially, Tr. 72-75, and upon reconsideration, Tr. 82-83. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 13, 2016. Tr. 34-50. On July 25, 2016, the ALJ issued an unfavorable decision, Tr. 20-27, and on December 6, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 30 years old at the time of the hearing. Tr. 36. She left school in the ninth grade. Tr. 36. At the time of the hearing, she was working on her GED and was employed as a caregiver in an adult family home around 14 hours per week.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2] Under Title XVI, benefits are not payable before the date of application. 20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

Tr. 36, 38. She also has work experience performing housekeeping at a hotel and in fast food service. Tr. 40.

Plaintiff testified that she has a hard time keeping a job. Tr. 42. She has been told she is not fast enough, and she does not remember everything she needs to know. Tr. 42. She has lost jobs because she was late and because she was not fast enough at organizing. Tr. 43. She has a hard time being organized at home and gets overwhelmed. Tr. 43. She gets distracted and loses things a lot. Tr. 43, 45. She sometimes has a hard time keeping track of dates and appointments. Tr. 45. She has experienced depression which causes her to stay at home. Tr. 47.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 14, 2014, the alleged onset date. Tr. 22. At step two, the ALJ found that Plaintiff has the following medically determinable impairments: attention deficit disorder (ADD)/attention deficit hyperactivity disorder (ADHD), learning disorder, and affective disorder. Tr. 22. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months. Tr. 22. Therefore, the ALJ found Plaintiff does not have a severe impairment or combination of impairments. Tr. 22.

Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 14, 2014, the date the application was filed. Tr. 26.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective complaints;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ made a proper step two finding.

ECF No. 12 at 6.

**DISCUSSION**

**A.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected her subjective complaints. ECF No. 12 at 16-20. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible. Tr. 25.

First, the ALJ found the objective medical evidence does not fully support the level of limitation claimed. Tr. 23-24. An ALJ may not discredit a claimant's testimony and deny benefits solely because the degree of symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ cited numerous records supporting the conclusion that Plaintiff's allegations are not well-supported in the record. Tr. 23-25. For example, Plaintiff reported to her counselor in December 2013 that, "I can work just not anything that is too stressful," and her counselor agreed. Tr. 23, 323. In January 2014, Plaintiff's counselor asked her to make new goals "as she has not been depressed

lately and this goal seems to be taken care of at this time." Tr. 24, 317. In March 2014, Cheta Nand, M.D., a psychiatrist, indicated that Plaintiff reported "she is happy and has no depression with the current medications. Her attention is getting better. Her forgetting is better," and there were no changes in June and July. Tr. 24, 367, 406, 409. Similarly, in March 2015 she was not depressed or anxious and she was "very happy about her condition." Tr. 24, 470. In December 2015 Plaintiff was feeling "stable and happy" and reported "no problems at this time" in January 2016. Tr. 24, 462, 472. By April 2016, Plaintiff was looking for a job, reported no depression, had no problems with her ex-boyfriend, was sleeping well, was cooking new foods, and was working on her driving skills. Tr. 24, 458. In June 2016, Plaintiff reported having a full-time job which interfered with her ability to attend her GED classes. Tr. 24, 479. These findings reasonably support the ALJ's conclusion that the alleged severity of Plaintiff's mental health claims is not consistent with the overall record.

Plaintiff contends the ALJ focused on activities that suggest nondisability and made an inaccurate characterization of the evidence, and that the ALJ improperly rejected her symptom testimony based on waxing and waning symptoms. ECF No. 12 at 18-19. Plaintiff cites only one example purportedly indicating that the ALJ mischaracterized or selectively considered the record. ECF No. 12 at 18. A June 2015 counseling record indicates, "[Plaintiff] was asked about employment, she reports that she got the job at Wendy's and for a while had

two part times.  She gave her two weeks at Burger King and right after she was let

go at Wendy's due to a conflict with her schedule but also because she was not

able to do the job."  Tr. 513.  The ALJ noted that Plaintiff "reported that she was

holding down 2 part-time jobs as a server and dishwasher, which contradicts her

claims of having disabling problems with her abilities to maintain pace and

remember information."  ECF No. 12 at 18; Tr. 24.   Plaintiff characterizes the

record cited by the ALJ as "showing the opposite" and quotes only Plaintiff's

statement that she was let go "because she was not able to do the job."  ECF No.

12 at 18 (citing Tr. 513).  Plaintiff omits the statement that she was let go "due to a

conflict in her schedule" from her argument, which is itself selective and

misleading.   ECF No. 12 at 18.

The ALJ's statement was accurate and the conclusion drawn was reasonable

based on the record.  To the extent the record could be interpreted differently, it is

the ALJ's duty to resolve the ambiguity.  *See Morgan v. Comm'r of Soc. Sec.*

*Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).   The Court will not reverse an

ALJ's findings regarding Plaintiff's symptom claims based on contradictory or

ambiguous evidence.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)

(citing *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984)).  Even if this citation by

the ALJ was incomplete or mischaracterized (and the Court does not so find),

Plaintiff failed to demonstrate that the ALJ's conclusion about the record overall is

otherwise based on error.

Second, the ALJ found is capable of high functioning activities of daily living. Tr. 24. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ observed Plaintiff testified she was taking classes four days per week for two hours per day to earn her GED and was working part-time as a caregiver at the time of the hearing. Tr. 24, 37-38. She had recently passed the written driving test and was planning to take the driving portion soon. Tr. 24, 37. She reported she was able to take the bus, clean, do laundry, shop, prepare meals, handle personal care without problems, watch movies, use the internet, and maintain a few friendships. Tr. 24, 162-69, 211-18. The ALJ concluded that these activities suggest Plaintiff should be able to sustain full-time employment. Tr. 24.

Without citing the ALJ's decision, Plaintiff contends the ALJ "overstated" her activities. ECF No. 12 at 19. However, the ALJ accurately cited Plaintiff's testimony and report of her own abilities in considering her daily activities. Tr. 24. Furthermore, as noted *supra*, despite Plaintiff's assertion to the contrary, even if some of the activities cited by the ALJ do not translate directly to full-time work, they reasonably demonstrate abilities inconsistent with Plaintiff's claimed limitation and undermine the degree of limitation alleged. *See Molina*, 674 F.3d at 1113.

Third, the ALJ found inconsistencies regarding Plaintiff's reported functioning and the medical evidence. Tr. 25. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59. The ALJ noted a report by the Cooperative Disability Investigations Unit (CDIU) generated after the Disability Determination Services (DDS) office found inconsistencies in Plaintiff's allegations and presentation throughout the record. Tr. 25, 416-23. An investigator interviewed Plaintiff and one of her friends and noted information regarding her activities, the effectiveness

of her medications, her memory, and observations regarding her communication during the interview. Tr. 25, 418-22. Plaintiff does not acknowledge or address the ALJ's consideration of the CDIU report or the inconsistencies which triggered the investigation. The contents of the report were reasonably characterized as undermining Plaintiff's symptom claims, and the inconsistency is a clear and convincing reason supported by substantial evidence.

Lastly, Plaintiff contends the ALJ "appeared to conflate the step two and credibility analyses, and engaged in a general review of the medical evidence and Plaintiff's activities in discounting her subjective complaints, with no specificity as to what testimony was discredited or why." ECF No. 12 at 18; *see also* ECF No. 14 at 7-8 ("the ALJ and Commissioner offer little more than vague assertions that the claimant's allegations are inconsistent with the evidence of record"). Indeed, general findings are an insufficient basis for a credibility finding. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must state which testimony is not credible and what evidence suggests the complaints are not credible. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff testified that she has a hard time keeping a job because she is not fast enough and she does not remember instructions. Tr. 42. Contrary to Plaintiff's argument that the ALJ was unspecific and vague, the ALJ identified the testimony that was discredited and evidence undermining it. For example, the ALJ noted, "[t]he November 2013 psychological evaluation reflected good cognitive abilities,

*which conflicts with the claimant's report of ongoing difficulty with retaining*

*information.* Tr. 23. Similarly, the ALJ stated, "[t]he claimant is alleging disability

based on mental health symptoms *that she testified affect her pace and memory on*

*the job,*" and went on to note evidence in the record undermining that claim. Tr. 23.

The ALJ observed, "[t]he claimant even reported that she was holding down 2 part-

time jobs as a server and dishwasher, *which contradicts her claims of having*

*disabling problems with her abilities to maintain pace and remember information.*"

Tr. 24. These findings are sufficiently specific to ensure the ALJ's conclusions were

not general or arbitrary.

**B.    Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of examining

psychologist Tae-Im Moon, Ph.D., and reviewing psychologist Renee Eisenhauer,

Ph.D., as well as GAF scores throughout the record. ECF No. 12 at 6-14.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan*, 246 F.3d at 1201-02 (brackets omitted). "Generally, a treating

physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's."

*Id*. "In addition, the regulations give more weight to opinions that are explained

than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

  1.  *Tae-Im Moon, Ph.D.*

Dr. Moon examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form in November 2013. Tr. 260-64. He diagnosed attention deficit hyperactivity disorder predominantly inattentive type; learning disorder NOS by history; and depressive disorder NOS. Tr. 262. He assessed marked limitations, defined as very significant limitations on the ability to perform one or more basic work activities, in four functional areas: the ability to understand, remember and persist in tasks following detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances without special supervision; the ability to communicate and perform effectively in a work setting; and the ability to set realistic goals and plan independently. Tr. 263. Dr. Moon also assessed moderate limitations in eight functional areas. Tr. 262-63.

Because Dr. Moon's opinion was contradicted by the opinion of Dr. Robinson, Tr. 67-68, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Moon's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ gave little weight to Dr. Moon's opinion because Plaintiff does not have significant difficulty in the functional areas for which Dr. Moon assessed marked limitations. Tr. 25. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. The ALJ observed that Plaintiff was taking classes, worked part-time, and cared for her young daughter. Tr. 25-26. The ALJ also noted Plaintiff reported being able to handle her own finances. Tr. 26, 168, 214. These activities reasonably contradict the marked or "very significant" limitations assessed by Dr. Moon regarding Plaintiff's abilities to follow instructions, maintain attendance, communicate and perform, and set goals and plan.

Plaintiff first argues that the ALJ's finding is conclusory and "boilerplate." ECF No. 12 at 9. The finding is not boilerplate because the ALJ referred to the record and specific findings inconsistent with Dr. Moon's conclusions. Tr. 24-25. Furthermore, the finding is not conclusory because the inconsistency between

Plaintiff's activities and the limitations assessed by Dr. Moon is apparent. "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the paragraph discussing [a doctor's] findings and opinion, and draw inferences relevant to [that doctor's] findings and opinion, if those inferences are there to be drawn." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ's finding regarding Dr. Moon's opinion is sufficiently specific.

Plaintiff further argues that the ALJ "appears to overstate" Plaintiff's functioning. ECF No. 12 t 9. To the contrary, the ALJ cited Plaintiff's own testimony and reported activities in evaluating Dr. Moon's opinion. Tr. 24-25. Plaintiff asserts the ALJ's conclusions are flawed because her testimony did not establish how she is doing in her GED classes, ECF No. 12 at 10, notwithstanding that Plaintiff's counsel could have elicited such testimony. Furthermore, Plaintiff contends, "the records shows that Plaintiff has been unsuccessful in obtaining her GED," characterizing it as "an ongoing struggle," because she has been working toward it since January 2014. ECF NO. 12 at 10. To the extent this could be a reasonable characterization of the record, the ALJ's finding that Plaintiff's attendance at GED classes contradicts Dr. Moon's assessment is also reasonable. When the evidence conflicts or is ambiguous, the ALJ is the arbiter. *Magallanes*, 881 F.2d at 751; s*ee also Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987) (concluding the existence of a legally supportable alternative resolution of the

evidence does not provide a sufficient basis for reversing an ALJ's decision which is supported by substantial evidence).

Plaintiff notes that her part-time position as a caregiver requires enrollment in CNA classes which she testified she was unable to find at the time. ECF No. 12 at 10; Tr. 38-39. Plaintiff extrapolates that "it appears doubtful that she would qualify for CNA training, let alone possess the aptitude for it if enrolled." ECF No. 12 at 10. This assertion is without basis in the record. The reasons for Plaintiff's departure from school in the ninth grade are not established in the record, Tr. 261 ("she was pulled out of school but could not recall why") and there is no evidence supporting the conclusion that Plaintiff's GED efforts are impeded by any impairment. In fact, Plaintiff reported missing GED classes due to appointments and full-time work. Tr. 494, 479.

Plaintiff additionally contends that she receives "considerable parenting help" from her daughter's grandmother. ECF No. 12 at 10. This is itself an overstatement of the record. When asked how often the grandmother helps with her daughter, Plaintiff testified that "[s]he's willing to watch [my daughter] all the time so pretty much all the time." Tr. 48-49. It is reasonable to expect that if Plaintiff is going to school and working part-time she would require assistance with child care which does not reasonably suggest a functional limitation. Plaintiff also asserts "deficits in parenting" exist based on a "CPS report made against her." ECF No. 12 at 10. Even if "parenting deficits" were established in the record,

there is no evidence that they would be due to a mental health impairment or functional limitation.

Lastly, Plaintiff argues the ALJ failed to address the moderate limitations also assessed by Dr. Moon. ECF No. 12 at 11. While the ALJ found the marked limitations assessed by Dr. Moon were inconsistent with Plaintiff's activities, the ALJ did not specifically mention the moderate limitations in rejecting Dr. Moon's opinion. Tr. 24. Notwithstanding, the ALJ noted Dr. Moon's cognitive findings were within normal limits and there were no issues with memory or concentration. Tr. 25, 264. Similarly, the ALJ found the GAF score of 51-55[3] assessed by Dr. Moon is inconsistent with her appearance, report of activities, and performance on testing. Tr. 25. The ALJ gave little weight to Dr. Moon's report. Tr. 25. Specific language indicating the moderate limitations were also rejected is not required; the court may draw reasonable inferences from the ALJ's discussion of a physician's report. *See Magallanes*, 881 F.2d at 755. It is apparent that the ALJ rejected the limitations assessed by Dr. Moon given the ALJ's discussion of Dr. Moon's findings and the record overall.

---

[3] A GAF score of 51-60 indicates moderate symptoms or any moderate impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (Am. Psychiatric Ass'n 4th ed.) (1994).

Additionally, Plaintiff argues the ALJ "substituted his opinion for that of a trained psychologist." ECF No. 12 at 11; ECF No. 14 at 4. It is improper for an ALJ to act as his own medical expert and substitute his opinion for the opinion of a medical doctor. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975). Plaintiff's argument overlooks the opinion John F. Robinson, Ph.D., a reviewing psychologist whose opinion was given great weight by the ALJ, and who reviewed Dr. Moon's opinion and the CDIU report and found no severe impairment. Tr. 25, 67-68. The ALJ found Dr. Robinson's opinion was supported by the treatment record showing improvement with counseling and medication and by the level of function required by Plaintiff's activities. Tr. 25. The ALJ did not impermissibly "play doctor" as the findings were based in part on Dr. Robinson's opinion. Based on the foregoing, the ALJ provided specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Moon's opinion.

### 2. Renee Eisenhauer, Ph.D.

Plaintiff contends the ALJ erred by failing to properly consider Dr. Eisenhauer's opinion. ECF No. 12 at 13-14. In April 2014, Dr. Eisenhauer reviewed the record and identified the severe impairments of ADD/ADHD, learning disorder, affective disorders, and anxiety disorders. Tr. 56. She assessed a marked limitation in the ability to follow detailed instructions and nine moderate limitations. Tr. 58-59. Dr. Eisenhauer opined that Plaintiff can follow, understand and execute simple, routine tasks; can maintain concentration, persistence, and pace for simple,

routine tasks; would do better in smaller groups of familiar people; and would likely need some additional time to make adaptations to her routine and would benefit from help with planning and goal setting. Tr. 58-59. The ALJ gave no weight to Dr. Eisenhauer's opinion. Tr. 25.

Because Dr. Eisenhauer's opinion was contradicted by the opinion of Dr. Robinson, Tr. 67-68, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Eisenhauer's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ rejected Dr. Eisenhauer's opinion because it is inconsistent with Plaintiff's activities, course of treatment, and the contents of the CDIU report, which were all reasonably interpreted by the ALJ as discussed *supra*. Tr. 25. Plaintiff contends the ALJ's finding is improperly conclusive and boilerplate. ECF No. 12 at 13. However, the ALJ discussed the basis for each of these reasons elsewhere in the decision, and the ALJ need not explicitly re-discuss Dr. Eisenhauer's report in the context of these reasons. *See Lewis v. Apfel*, 236 F.3d 503, 512-13 (9th Cir. 2001). All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Additionally, the ALJ credited the opinion of Dr. Robinson which contradicts Dr. Eisenhauer's findings and concludes there is no severe impairment. Tr. 25, 67-68.

Plaintiff does not allege any other error or otherwise discuss the ALJ's consideration of Dr. Eisenhauer's opinion. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2007) (noting the court may decline to address issues not argued with specificity). The ALJ's reasons for giving no weight to Dr. Eisenhauer's opinion are specific, legitimate, and supported by substantial evidence.

### 3. GAF Scores

Plaintiff contends the ALJ committed legal error by rejecting numerous GAF scores indicating serious impairment "across the longitudinal record." ECF No. 12 at 12. Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan*, 169 F.3d at 598. The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the DSM–V. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Am. Psychiatric Ass'n 5th ed.) (2013).

The ALJ gave little weight to the GAF scores in records from Catholic Family Services from September 2014 to June 2016, consisting primarily of therapy progress notes. Tr. 26, 472-520. The ALJ noted the GAF scores tended to be lower

assessments of functioning than Plaintiff's activities indicated. Tr. 26. For example, the ALJ noted that in September 2014 Dr. Nand assessed a GAF score of 50, indicating a "serious impairment" in functioning,[4] yet Plaintiff reported "feeling good" and was working two jobs at that time. Tr. 477. Similarly, in December 2014 a GAF score of 45 was assessed but Plaintiff was "doing well" and was "very happy," felt no depression, and was looking for work. Tr. 474. Again, in January 2016, as GAF score of 45 was assessed despite Plaintiff's report that she was doing well and had "no problems." Tr. 26. Plaintiff contends that "even during times of decreased symptoms of depression and anxiety, she is unable to maintain even part-time work due to learning disorder and ADD/ADHD, which results in visible deficits in concentration and focus." ECF No. 12 at 12 (citing Tr. 305, 312, 464, 513). This assertion is not supported by the records cited by Plaintiff, which indicates that she left one job voluntarily and another at least in part due to a conflict in her schedule. Tr. 464, 513. The ALJ reasonably rejected the GAF scores assessed in light of Plaintiff's actual functioning.

/ / /

/ / /

---

[4] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (Am. Psychiatric Ass'n 4th ed.) (1994).

## C.    Step Two

Plaintiff contends the ALJ improperly rejected her impairments at step two and therefore failed to complete the sequential process.  ECF No. 12 at 14-16.  At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908 (1991).  "Step two is merely a threshold determination meant to screen out weak claims.  It is not meant to identify the impairments that should be taken into account when determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citation omitted).  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations.  *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The ALJ found that Plaintiff has the medically determinable impairments of ADD/ADHD, learning disorder, and affective disorder, but has no severe impairment.  Tr. 22.  Plaintiff again contends the ALJ "appeared to conflate" the analysis and "relied on invalid boilerplate language."  ECF No. 12 at 15.  This

contention is without merit as the ALJ specifically considered the evidence in considering the "B criteria" for evaluating mental impairments. Tr. 26. The regulations provide that a "special technique" is used in evaluating the severity of mental impairments. 20 C.F.R. § 416.920a (2011). Once a medically determinable impairment is established, the ALJ rates the degree of limitation resulting from the impairment in four functional areas (the "B criteria" of the listings) based on the relevant evidence. 20 C.F.R. § 416.920a(b)-(c). The ALJ discussed the evidence and cited the record in evaluating the four functional areas and therefore did not rely on boilerplate language or a conflated analysis. Tr. 26. Based on the record, the ALJ found Plaintiff has only mild limitations in three of the four functional areas, and pursuant to the regulations, Plaintiff's limitations are nonsevere. Tr. 26; 20 C.F.R. 416.920a(d)(1).

Plaintiff cites records noting symptoms of her medically determinable impairments, ECF No. 12 at 15, but Plaintiff has not established any functional limitations resulting from those impairments based on the record. As discussed *supra*, the ALJ reasonably evaluated the record and made legally sufficient findings based on substantial evidence in rejecting the opinions of Dr. Moon and Dr. Eisenhauer, and properly credited the opinion of Dr. Robinson which supports the step two determination. Further, Plaintiff does not acknowledge or address the basis for the ALJ's findings regarding the B criteria, and thus fails to identify any error in those findings. ECF No. 12 at 15-16. For these reasons, the ALJ's step

two finding is supported by substantial evidence and there was no need to continue the sequential evaluation.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 14, 2019.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge